UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:24-CV-00047-GNS

TERESA HARMON,
individually on behalf of I.H. and S.H., her minor children                    PLAINTIFFS

v.

HON. LORI GOODWIN et al.                                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Motion to Dismiss (DN 22) on behalf of Defendants Jefferson Family Judge Lori Goodwin ("Judge Goodwin"), Stephanie Willis ("Willis"), David Nicholson ("Nicholson"), Katie Morgan ("Morgan"), Katie Comstock ("Comstock")[1] the Administrative Office of the Courts ("AOC"), and the Kentucky Supreme Court. The motion is ripe for adjudication.

## I.    BACKGROUND

This matter relates to two family court cases filed in Jefferson Family Court (Kentucky). (1st Am. Compl. ¶ 2, DN 6). Plaintiff Teresa Harmon ("Harmon") claims she and her two children, I.H. and S.H. (collectively, "Plaintiffs"), had their constitutional rights violated, and were subjected to tortious conduct during a series of child custody hearings and actions. (1st Am. Compl. ¶¶ 3-5, 25-55).

Plaintiffs filed this action asserting various federal and state law claims against numerous defendants. (1st Am. Compl. ¶¶ 54-322). For purposes of the pending motion, individual

---

[1] A notice of substitution (DN 64) has been filed reflecting that Comstock is no longer serving as the Director of the AOC as of December 1, 2024. Pursuant to Fed. R. Civ. P. 25(d) and to the extent that Comstock was sued in her official capacity, Zach Ramsey ("Ramsey"), her successor, is substituted as a party to this action.

Defendants against whom Plaintiffs have asserted claims in both individual and official capacities are:  Judge Goodwin, Willis, Nicholson, Morgan, and Comstock.  (1st Am. Compl. ¶¶ 5-9).  In addition, Plaintiffs have asserted claims against Defendants Administrative Office of the Courts ("AOC"), and the Kentucky Supreme Court.  (1st Am. Compl. ¶¶ 20-21).

Judge Goodwin, Willis, Nicholson, Morgan, Comstock, Ramsey, the AOC, and the Kentucky Supreme Court (collectively, "Moving Defendants") have moved to dismiss all claims asserted against them pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Defs.' Mot. Dismiss, DN 22).  Plaintiffs oppose the motion.[2]  (Pls.' Resp. Defs. Mot. Dismiss, DN 39).

## II.    DISCUSSION

In the 1st Amended Complaint, Plaintiffs assert seven Section 1983 claims, one NIED, and two IIED claims against Judge Goodwin in her individual and official capacities.  (1st Am. Compl. ¶¶ 54-111, 148-212, 237-48, 271-81, 291-317).   As to Nicholson and Comstock, Plaintiffs assert two Section 1983 claims in their individual and official capacities.  (1st Am. Compl. ¶¶ 157-212).   In addition, Plaintiffs assert a single Section 1983 claim each against Willis and Morgan in their individual and official capacities.  (1st Am. Compl. ¶¶ 51-101, 193-212).  Finally, Plaintiffs assert one Section 1983 claim against the Kentucky Supreme Court and three Section 1983 claims against the AOC.  (1st Am. Compl. ¶¶ 133-38, 157-236).

Moving Defendants seek dismissal of Plaintiffs' claims against them pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Defs.' Mem. Supp. Mot. Dismiss 6-24, DN 22-1).   Threshold challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) should generally be

---

[2] Plaintiffs have filed a 47-page document in response to the motion.  (Pls.' Resp. Defs.' Mot. Dismiss, DN 39).  Under LR 7.1(d), responses are limited to 25 pages in length, and if party wishes to exceed that page limit, the party must file a motion seeking permission from the Court to avoid having the non-compliant filing stricken from the record.   *See Joint Local Rules of Civil Practice*, https://www.kywd.uscourts.gov/sites/kywd/files/local_rules/KY%20Amended%20Civil%20Rules_08-1-2024.pdf.

decided before any ruling on the merits under Fed. R. Civ. P. 12(b)(6). *See Bell v. Hood*, 327 U.S. 678, 682 (1946).

### A.    Fed. R. Civ. P. 12(b)(1)

Challenges to subject matter jurisdiction come in several varieties. Facial attacks challenge a plaintiff's establishment of jurisdiction in their complaint and require the court to examine the jurisdictional basis. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citation omitted). Factual attacks contest the existence of factual prerequisites to jurisdiction. *See id.* In such motions the court is empowered to resolve the factual disputes affecting any jurisdictional prerequisites. *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). A plaintiff bears the burden in both these situations. *See Bell*, 327 U.S. at 682.

### 1.    *Domestic Relations Exception*

Moving Defendants argue that Plaintiffs' claims fail to the extent that the domestic-relations exception to federal jurisdiction applies. (Defs.' Mem. Supp. Mot. Dismiss 8-9). "The domestic relations exception precludes federal courts from hearing cases that 'involv[e] the issuance of a divorce, alimony, or child custody decree.'" *Alexander v. Rosen*, 804 F.3d 1203, 1205 (6th Cir. 2015) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992)).

In seeking dismissal, however, Moving Defendants fail to acknowledge that this exception has only been applied to cases based on diversity jurisdiction. *See Chevalier v. Est. of Barnhart*, 803 F.3d 789, 795 (6th Cir. 2015). This matter, however, is before this Court on federal question jurisdiction. (1st Am. Compl. ¶ 23). As a sister court has noted, "[t]he Sixth Circuit has declined to determine whether this exception also applies in federal-question cases, *see Alexander v. Rose*, 804 F.3d 1203, 1205 (6th Cir. 2015), but it has not closed the door on joining the Seventh Circuit in deciding that it does, in the proper case." *Robards v. Slatery*, No. 2:24-CV-00052, 2024 WL 4370780, at *2 (M.D. Tenn. Oct. 1, 2024) (citing *McGuire v.*

*Tennessee*, No. 22-5614, 2023 WL 9289932, at *2 (6th Cir. Mar. 17, 2023), *cert. denied*, 144 S. Ct. 218 (2023)).   In the absence of Sixth Circuit precedent applying the domestic relations exception to matters before the district court based on federal question jurisdiction and Moving Defendants' failure to address the lack of precedent, this Court declines to consider the application of this exception in this instance.

### 2.    Younger *Abstention Doctrine*

Moving Defendants rely on the doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971), in asserting that this Court should abstain from hearing the claims raised.   (Defs.' Mem. Supp. Mot. Dismiss J. 9-11).   "*Younger* abstention requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings."   *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (citing *Younger*, 401 U.S. at 40-41); *see also Doe v . Lee*, No. 3:21-CV-00809, 2022 WL 1164228, at *3 (M.D. Tenn. Apr. 19, 2022) (citation omitted) (noting the *Younger* abstention doctrine is a facial attack on the complaint).   In determining whether to abstain on this basis, a court must consider three factors: "(1) whether the underlying proceedings constitute an ongoing judicial proceeding, (2) whether the proceedings implicate an important state interest, and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge."   *Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir. 2008) (citation omitted).

As alleged in the 1st Amended Complaint, the state court proceeding is still ongoing, and Plaintiffs seek injunctive or declaratory relief for every cause of action.[3]   (1st Am. Compl. ¶¶ 101, 111, 118, 125, 132, 138, 147, 156, 191-92, 211-12, 228-36, 248, 257, 274, 281, 290, 297-98, 301, 307, 317).   Regarding the second factor, "the Sixth Circuit has recognized that the realm

---

[3] While the 1st Amended Complaint asserts that there is a lack of remedies in state court, the allegations reflect unsuccessful attempts to take interlocutory appeals rather than final and appealable decisions of the Jefferson Family Court.   (1st Am. Compl. ¶¶ 318-22).

of domestic relations is an important state interest." *Evans v. Downey*, No. 1:15-CV-00117-GNS, 2016 WL 3562102, at *4 (W.D. Ky. June 23, 2016) (citing *Zak v. Pilla*, 698 F.2d 800, 801 (6th Cir. 1982)); *see also Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995) ("These traditional domestic relations issues qualify as important state issues under the second element of *Younger*."). Finally, Harmon may appeal any adverse decision of the family court to the Kentucky Court of Appeals as a matter of right. *See* KRS 22A.020. Thus, the relevant factors all weigh in favor of abstaining and dismissing the claims asserted against Moving Defendants based on the *Younger* abstention doctrine. Plaintiffs' claims against Moving Defendants are dismissed to the extent that *Younger* abstention doctrine applies.

### 3. Rooker-Feldman *Doctrine*

Moving Defendants also contend that this Court lacks jurisdiction to hear claims against them due to the *Rooker-Feldman* doctrine. (Defs.' Mem. Supp. Mot. Dismiss 11-12). Under this doctrine, "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings." *Pieper v. Am. Arb. Ass'n*, 336 F.3d 458, 460 (6th Cir. 2003) (internal quotation marks omitted) (citation omitted). Only the U.S. Supreme Court has jurisdiction to review state court judgments. *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923). Thus, the *Rooker-Feldman* doctrine acts as a limitation on federal courts' jurisdiction, "[i]f the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's [ruling] . . . ." *Feldman*, 460 U.S. at 482 n.16.

While the 1st Amended Complaint attempts to couch its allegations in terms of seeking vindication of Plaintiffs' rights, they are effectively asking this Court to review and overturn the decisions of the Jefferson Family Court. For example, Plaintiffs challenge the state court's order prohibiting Harmon from posting about I.H. or the litigation on social media, and Plaintiffs seek

review of that court's order prohibiting Harmon from contacting I.H. at her school. (1st Am. Compl. ¶¶ 155, 273). The appropriate avenue for Plaintiffs to seek judicial review of Jefferson Family Court's decisions is through the state court system,[4] and this Court lacks jurisdiction to conduct such a review. Plaintiffs' Section 1983 claims are barred by the *Rooker-Feldman* doctrine to the extent those claims seek judicial review of the Jefferson Family Court's decision by this Court, and those claims are dismissed.

### 4. *Declaratory Judgment Act*

Because Plaintiffs seek declaratory relief, Moving Defendants assert that the Court should decline to exercise jurisdiction over those claims based on the factors outlined in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984). (Defs.' Mem. Supp. Mot. Dismiss 13-14). In relevant part, the Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a).

In *Grand Trunk*, the Sixth Circuit articulated five key factors for courts to consider in determining whether to exercise jurisdiction over a claim for declaratory relief:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or to "provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

---

[4] In the 1st Amended Complaint, Plaintiffs acknowledge that Harmon appealed the family court case to the Kentucky Court of Appeals and to the Kentucky Supreme Court, where the Kentucky Supreme Court ultimately denied review of her petition to proceed *in forma pauperis*. (1st Am. Compl. ¶¶ 318-22). Those appeals, however, were interlocutory.

*Grand Trunk*, 746 F.2d at 326.  The Court must balance the five factors, and "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case."  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008); *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

### a.    Settlement of the Controversy & Clarification of Legal Relations

The first two *Grand Trunk* factors assess "(1) whether the declaratory action would settle the controversy" and "(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue . . . ."  *Grand Trunk*, 746 F.2d at 326.  Because "it is almost always the case that if a declaratory judgment will settle the controversy, . . . it will clarify the legal relations in issue," the inquiries required by these two factors often overlap substantially. *United Specialty Ins. Co. v. Cole's Place, Inc.*, No. 18-5545, 2019 WL 3955847, at *6 (6th Cir. Aug. 22, 2019) (citing *Flowers*, 513 F.3d at 557; *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)).

In this instance, this Court's involvement in the ongoing custody dispute would not settle the controversy, and Judge Goodwin continues to preside over the matter.  Further, it is not clear from the allegations how Plaintiffs expect this Court to clarify the legal relations at issue, which are properly before the Jefferson Family Court.  Thus, these factors weigh against exercising jurisdiction.

### b.    Procedural Fencing or Res Judicata

The third factor considers "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or [is] likely to create a race for res judicata."  *Flowers*, 513 F.3d at 558.  The Sixth Circuit has explained that this analysis is "meant to preclude jurisdiction

for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum.'" *Id.* (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)).  Courts are reluctant to impute an improper motive absent direct evidence of procedural fencing.  *See id.* (citations omitted).  As the Sixth Circuit has noted, "we generally do not make a finding of procedural fencing if the declaratory-judgment plaintiff filed after the commencement of litigation in state court." *United Specialty*, 936 F.3d at 399.

Plaintiffs filed the present action years after the cases were filed in Jefferson Family Court, and there is no evidence of procedural fencing.  Accordingly, this factor is neutral.  *See id.* (citations omitted).

### c.    Increased Friction Between Federal and State Courts

Fourth, the Court must consider "whether accepting jurisdiction would increase friction between federal and state courts." *Flowers*, 513 F.3d at 559.  There are three sub-factors this Court must consider:

> (1)    whether the underlying factual issues are important to an informed resolution of the case;
> (2)    whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3)    whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

Under the first sub-factor, the Court must determine "whether the state court's resolution of the factual issues is necessary to the district court's resolution of the declaratory judgment." *Flowers*, 513 F.3d at 560.  As the Sixth Circuit has noted:

> Traditionally, disputes involving domestic relations including child custody and adoption proceedings, have been thought to be wholly within the province of the state courts.  The cases recognize the "local" nature of domestic relations

8

> problems, the strong interest of the states in addressing such questions without
> interference, and the expertise of local agencies and courts in monitoring and
> resolving domestic relations matters.   While older cases indicate that federal
> courts are entirely without jurisdiction to grant divorces or award custody of
> children, more recent decisions hold that strong policies of federal-state comity
> and deference to state expertise in the area are the theoretical underpinnings of
> federal courts' refusal to consider such cases.

*Huynh Thi Anh v. Levi*, 586 F.2d 625, 632 (6th Cir. 1978); *see also Locke v. Brown*, No. 3:18-CV-697-RGJ, 2019 WL 4675390, at *8 (W.D. Ky. Sept. 25, 2019) ("Here, the underlying action is a child custody case.  Certainly, the state has a strong interest in addressing questions of the welfare and best interests of children involved in custody disputes[,] [and] . . . in addressing such questions without interference."  (citing *Levi*, 586 F.2d at 632)).  "Under the principles of comity and deference to state expertise in the field of domestic relations, it has been [the Sixth Circuit's] consistent policy to refuse to exercise jurisdiction over claims which seek to collaterally attack a state court judgment terminating parental rights."  *Sefa v. Kentucky*, No. 5:12-CV-JMH, 2012 WL 1158793, at *2 (E.D. Ky. Apr. 5, 2012) (alteration in original) (quoting *Stephens v. Hayes*, 374 F. App'x 620, 623 (6th Cir. 2010)); *see also Rudd v. Pittman*, No. 1:20-CV-27, 2020 WL 13749259, at *6 (W.D. Mich. July 28, 2020) ("Rudd is essentially asking this Federal Court to impose its own views of case and litigant management on a state-court judge in a proceeding that involves predominantly state interests.  In other words, Rudd is asking this Court to sit as a super-judicial tenure commission, overseeing Judge Pittman's conduct in Rudd's case.  The Court should decline his request, which would undoubtedly 'increase friction between our federal and state courts and improperly encroach upon state jurisdiction.'"  (quoting *Grand Trunk*, 746 F.2d at 326)).

In this instance, Plaintiffs are inviting this Court to sit as a super-family court to review the state court's rulings.  Performing such a review would increase friction between federal and

state courts and inappropriately infringe upon the jurisdiction of the Jefferson Family Court. This subfactor weighs in favor of declining jurisdiction.

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. The Jefferson Family Court has held hearings relating to the decisions being challenged in this action. This Court is in no better position to evaluate the factual issues relating to the child custody issues considered by the state court. This second sub-factor does not support exercising jurisdiction.

"The final sub-factor requires the court to determine whether the issue in the federal action implicates important state policies and therefore would be more appropriate for the state court to address." *Secura Ins. Co. v. Gray Const., Inc.*, 661 F. Supp. 2d 721, 730 (W.D. Ky. 2009). Issues of child custody are issues of important state policy, far more appropriately resolved by the state court. This sub-factor does not support jurisdiction. Thus, after considering the relevant sub-factors, the fourth *Grand Trunk* factor weighs strongly against exercising jurisdiction.

### d.    Availability of Alternative Remedy

In considering the final factor, the Sixth Circuit has stated that the district court should "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk*, 746 F.2d at 326. Following a split in precedent regarding "the possibility of seeking a declaratory judgment or indemnity action in state court counsels against the district court exercising jurisdiction[,]" the Sixth Circuit held that "rather than applying a general rule, our inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562.

As this Court has noted, "[w]hen, as here, a litigant believes that a judge violates the litigant's constitutional rights, that litigant's method of recourse is to appeal the adverse decision,

not collaterally attack it through an action against the state judge under Section 1983." *Locke*, 2019 WL 4675390, at *8 (citation omitted).  Harmon may seek an appeal of the Jefferson Family Court's decisions by timely filing a notice of appeal to the Kentucky Court of Appeals pursuant to Ky. R. App. P. 2 and 3.  Because the family court proceedings are still pending in state court and based on comity, the alternative remedy in state court is undoubtedly better and more effective.  As a result, this last factor does not support granting discretionary jurisdiction over this matter.

After considering the relevant factors, those factors overall weigh against the exercise of jurisdiction by this Court.  To the extent that Plaintiffs are seeking declaratory relief, this Court declines to exercise jurisdiction, and those claims are dismissed.

### 5.    Eleventh Amendment Immunity

Moving Defendants also argue that the Section 1983 claims are barred by Eleventh Amendment immunity.  (Defs.' Mem. Supp. Mot. Dismiss 17-19).  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Supreme Court has interpreted the Eleventh Amendment as barring claims regardless of the remedy sought against the state itself, a state agency, or a state official acting in their official capacity unless the state waives immunity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 71 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984) (citing *Missouri v. Fiske*, 290 U.S. 18, 27 (1933)).; *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (2008).  This immunity extends to a state agency, an arm of the

state, or a branch of the government, and bars all claims requesting relief against the state in federal court unless the state has waived its immunity. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 100, 124; *Pugh*, 438 U.S. at 782; *P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 146.

As the Sixth Circuit has recognized, the Commonwealth of Kentucky has not waived its Eleventh Amendment immunity. *See Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004) (citation omitted). This same immunity extends to Moving Defendants sued in their official capacities. *See Graham*, 473 U.S. at 169 (citations omitted). In addition, because the Kentucky Supreme Court and the AOC are agencies of the Commonwealth of Kentucky, the Eleventh Amendment bars any Section 1983 claim against those entities. *See Mischler v. Clary*, No. 3:13-CV-26, 2016 WL 3849817, at *4 (E.D. Ky. July 11, 2016) ("The Kentucky Supreme Court is 'unquestionably an arm of the state for purposes of the Eleventh Amendment, and is thus immune from suit under the Eleventh Amendment.' *Anglin v. Ky. Sup. Ct.*, No. 3:13-33-GFVT, 2013 WL 6253159, at *2 (E.D. Ky. Dec. 3, 2013). It is also well[-]settled that § 1983 does not abrogate that immunity." (citing *Graham*, 473 U.S. at 169 n.17)); *Miller v. Admin. Off. of Cts.*, No. 3:01CV-339-S, 2001 WL 1792453, at *1 (W.D. Ky. Sept. 11, 2001) ("[T]here is no dispute that the AOC is an arm of Kentucky's government. This means that the AOC is entitled to Eleventh Amendment protection and does not constitute a 'person' under § 1983."). Accordingly, this Court lacks jurisdiction to hear the Section 1983 claims due to Eleventh Amendment immunity, and the motion is granted on this basis.

Moving Defendants acknowledge that there is an exception to the *Younger* Doctrine which allows "a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law, regardless of whether compliance might have an ancillary effect on the state treasury." (Defs.' Mem. Supp. Mot. Dismiss 18-19); *S & M Brands,*

*Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (internal citation omitted) (citations omitted).

Moving Defendants argue, however, that the Court should reject Plaintiffs' request for prospective relief and instead treat it as a request for retroactive relief, which is also barred by Eleventh Amendment immunity. (Defs.' Mem. Supp. Mot. Dismiss 18-19). Plaintiffs failed to address this issue in their response, so they have conceded that dismissal is warranted on this basis.[5] *See Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) ("[W]here, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived." (citations omitted)); *Bazinksi v. JPMorgan Chase Bank, N.A.*, No. 13-14337, 2014 WL 1405253, at *2 (E.D. Mich. Apr. 11, 2014) ("Claims left to stand undefended against a motion to dismiss are deemed abandoned." (citation omitted)). Thus, Plaintiffs could not state a claim for prospective relief under Section 1983 for alleged violations of the ADA.

### 6.    Absolute Judicial Immunity & Quasi-Judicial Immunity

The 1st Amended Complaint purportedly asserts Section 1983 claims against Judge Goodwin, Willis, Nicholson, and Morgan in their individual capacities. (1st Am. Compl. ¶¶ 5-8). In their motion, these Moving Defendants contend that the individual capacity claims against

---

[5] Nevertheless, even if Plaintiffs had addressed this issue, the 1st Amended Complaint does not state a plausible claim for prospective relief for an ADA violation as part of Plaintiffs' Section 1983 claims. (1st Am. Compl. ¶¶ 157-236). The ADA is "independently actionable and [has a] comprehensive remedial scheme[]. Violating [the ADA] does not give rise to separate claims under § 1983." *Cole v. Taber*, 587 F. Supp. 2d 856, 863 (W.D. Tenn. 2008) (citations omitted); *see also Bernard v. N. Ky. Univ.*, No. 11-65-DLB-JGW, 2012 WL 1571184, at *7 n.6 (E.D. Ky. May 3, 2012) ("District courts within this circuit agree that the ADA provides a comprehensive remedial scheme such that violations of the ADA do not give rise to a separate claim under § 1983. Section 1983 is not an appropriate vehicle for such a claim, and thus any claim Plaintiff intends [to] assert[] a violation of the ADA was not properly brought."). Accordingly, Plaintiffs have failed to state an ADA claim under Section 1983.

them are barred either by the doctrine of absolute judicial immunity or quasi-judicial immunity. (Defs.' Mem. Supp. Mot. Dismiss 14-16).

"State judges enjoy absolute immunity from liability under 42 U.S.C. § 1983." *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012) (citation omitted). This immunity applies as "long as the complained-of act was not taken in the clear absence of all jurisdiction and so long as the act was a judicial act (the function was normally one performed by a judge and the parties dealt with the judge in his or her judicial capacity)." *Collins v. Lambert*, No. 06-CV-76-KKC, 2007 WL 293876, at *3 (E.D. Ky. Jan. 26, 2007) (citing *Pierson v. Ray*, 386 U.S. 547, 553-555 (1967)). In addition, "[a]bsolute judicial immunity is not diminished even if the judge's exercise of authority is flawed or if there are procedural errors." *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 359 (1978)). That immunity, however, may be defeated in two instances: "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (internal quotation marks omitted) (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)).

The alleged constitutional violations stem from actions taken by Judge Goodwin as a family court judge presiding over two cases pending in Jefferson Family Court to which Harmon is a party. (1st Am. Compl. ¶ 5). In that role, Judge Goodwin was clearly acting in her judicial capacity. As to the second exception, Judge Goodwin's decisions relate to child custody matters, which are precisely the kinds of cases heard by a family court. Thus, neither exception to judicial immunity applies, so the Section 1983 claims against Judge Goodwin in her individual capacity are barred. *See also Marks v. Tenn. Admin. Off. of Cts.*, No. 3:06-CV-01208, 2013 WL 432905, at *10 (M.D. Tenn. Feb. 4, 2013) ("Yet, judges sued under the ADA still 'enjoy judicial

immunity from suits arising out of the performance of their judicial functions.'" *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004))).

Similar to judges, "[j]udicial employees are immune from damages for the performance of quasi-judicial duties." *Wojnicz v. Davis*, 80 F. App'x 382, 383 (6th Cir. 2003) (citations omitted). This includes persons who are "performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citation omitted). As the Sixth Circuit has explained:

> This determination is made using a "functional" approach, under which courts look to the nature of the function being performed rather than the identity of the actor performing it. Also considered is "the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions."

*In re McKenzie*, 716 F.3d 404, 412 (6th Cir. 2013) (internal citation omitted (citation omitted)

The 1st Amended Complaint attempts to assert individual capacity claims against: Willis, who serves as Judge Goodwin's staff attorney; Nicholson, who is the Jefferson Circuit Court Clerk; and Morgan, who is Clerk of the Kentucky Court of Appeals. (1st Am. Compl. ¶¶ 6-7). The allegations asserted against Willis only relate to her performance of her official duties, which are integral to the judicial process. (1st Am. Compl. ¶¶ 83, 108-10, 201-02). As to Nicholson, Morgan and Comstock, the 1st Amended Complaint contains no specific factual allegations to support any basis upon which quasi-judicial immunity would not apply to them. Imposing personal liability on these persons who perform essential tasks for the judiciary would have a negative overall impact on operation of the judicial system. Therefore, the Section 1983 individual capacity claims asserted against Willis, Nicholson, Morgan, and Comstock are barred by quasi-judicial immunity.

Moving Defendants similarly argue that Plaintiffs Section 1983 claims against the AOC should be dismissed on immunity grounds.  In relevant part, KRS 27A.050 provides:

> The Administrative Office of the Courts is created to serve as the staff for the Chief Justice in executing the policies and programs of the Court of Justice. The director of the Administrative Office of the Courts, employees thereof, and administrative assistants of the Chief Justice shall serve at the pleasure of the Chief Justice.

KRS 27A.050.  "Because circuit judges are elected and do not serve at the pleasure of the Chief Justice, it is sufficiently clear that a circuit judge is not an employee of the AOC."  *Greene v. Commonwealth*, 349 S.W.3d 892, 906 (Ky. 2011).

In the 1st Amended Complaint, Plaintiffs seek injunctive relief against the AOC, *inter alia*, to "require[e] that AOC . . . become compliant and remain in compliance with the ADA at all times; train and properly supervise its employees as to the due process requirements of the ADA . . . ."  (1st Am. Compl. ¶ 191).  It is not clear from the allegations as to how the AOC otherwise violated the ADA or how its employees failed to comply with the ADA to support a Section 1983 claim.  While Plaintiffs are apparently seeking redress for Judge Goodwin's alleged handling of Harmon's accommodation requests, the AOC does not employ or have any supervisory role over an elected family court judge.  The assertion of the ADA claim against AOC otherwise appears to be an attempt by Plaintiffs to circumvent judicial immunity.  *See Marks*, 2013 WL 432905, at *11 ("The Court concludes that Plaintiff's attempt to circumvent the doctrine of judicial immunity by naming as Defendants the State of Tennessee and the Administrative Office of the Court fails.").  For these reasons, the Section 1983 claim against the AOC is also dismissed.

**B.**    **Fed. R. Civ. P. 12(b)(6)**[6]

When reviewing a motion to dismiss, a court "must (1) view the complaint in the light

most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett*

*v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*,

551 F.3d 461, 466 (6th Cir. 2009)).    In the complaint, the plaintiff must supply "factual

allegations . . . sufficient to give notice to the defendant as to what claims are alleged, and the

plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than

merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2007)).

A complaint must include "a short and plain statement of the claim showing that the

pleader is entitled to relief" in order to survive a motion to dismiss. Fed. R. Civ. P. 8(a)(2).    This

standard still permits courts to "disregard bare legal conclusions and naked assertion[s]" and

"afford[] the presumption of truth only to genuine factual allegations." *Dakota Girls, LLC v.*

*Phila. Indem. Ins. Co.*, 17 F.4th 645, 648 (6th Cir. 2021) (first alteration in original) (internal

quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678) (citation omitted).    Further, a court

may not "credit a [t]hreadbare recital of the elements of a cause of action . . . supported by mere

conclusory statements." *Id.* (alteration in original) (internal quotation marks omitted) (citation

omitted).

---

[6] In their response, Plaintiffs fail to address the contention of Moving Defendants that the 1st
Amended Complaint has generally failed to assert any individual capacity claim against Judge
Goodwin, Willis, Nicholson, Morgan, and Comstock.  (Defs.' Mem. Supp. Mot. Dismiss 16 n.2;
Defs.' Reply Mot. Dismiss 8-9, DN 48).  Accordingly, Plaintiffs have conceded that such claims
have not been properly asserted, and any individual capacity claims asserted against Judge
Goodwin, Willis, Nicholson, Morgan, and Comstock are dismissed. *See Humphrey*, 279 F.
App'x at 331; *Bazinksi*, 2014 WL 1405253, at *2.

The Supreme Court has advised courts to review *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," but this does not mean a court should fill in absent arguments or create claims on a *pro se* plaintiff's behalf, thus becoming an advocate for the party. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Principles requiring generous construction of *pro se* complaints are not, however, without limits. *Gordon* directs district courts to construe *pro se* complaints liberally. It does not require those courts to conjure up questions never squarely presented to them. District judges are not mind readers.").

### 1.     *Section 1983 Claim*

Assuming arguendo that Plaintiffs' Section 1983 claims are not barred by the Eleventh Amendment, Moving Defendants contend that Plaintiffs have failed to state such a claim against them. (Defs.' Mem. Supp. Mot. Dismiss 20). To state such a claim, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018) (citation omitted). The Supreme Court has held that states and state officials sued in their official capacities do not qualify as "persons" under Section 1983, and they are immune from liability. *See Will*, 491 U.S. at 70; *Graham*, 473 U.S. at 169. For these reasons, Plaintiffs have failed to state a Section 1983 claim against Judge Goodwin, Willis, Nicholson, Morgan, and Ramsey in their official capacities, and against the AOC and the Kentucky Supreme Court

### 2.     *ADA Claim*

Moving Defendants argue that Plaintiffs have failed to assert an ADA claim under Section 1983 against Judge Goodwin, Nicholson, Morgan, Comstock, Ramsey, and the AOC.

(Defs.' Mem. Supp. Mot. Dismiss 20-22).  Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "[T]he phrase 'services, programs, or activities" encompasses virtually everything a public entity does."  *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008) (internal quotation marks omitted) (citation omitted), *abrogated on other grounds as recognized by Roell v. Hamilton Cnty.*, 870 F.3d 471, 489 (6th Cir. 2017).  To state a Title II claim, the challenged discrimination must have occurred "'because of' disability, 'which is another way of saying that the plaintiff must establish a but-for relationship between the protested act and the individual's disability.'"  *S.R. v. Kenton Cnty. Sheriff's Off.*, 302 F. Supp. 3d 821, 836 (E.D. Ky. 2017) (quoting *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016)).

At best, the 1st Amended Complaint alleges that the Judge Goodwin, Nicholson, Morgan, Comstock, Ramsey, and the AOC should have done more to address Harmon's request for accommodations or failed to provide all of her requested accommodations.[7]  (1st Am. Compl. ¶¶ 157-92).  Ultimately, however, Plaintiffs have not plausibly alleged that the denial of the requested accommodations was because of Harmon's disability.  In addition, as noted above, the assertion of an ADA claim as part of a Section 1983 is improper.  *See Cole*, 587 F. Supp. 2d at 863; *see also Bernard*, 2012 WL 1571184, at *7 n.6.  Thus, Plaintiffs have failed to state an ADA claim against Judge Goodwin, Nicholson, Morgan, Comstock, Ramsey, and the AOC.

---

[7] Plaintiffs allege that Harmon has been deemed "permanently and totaled disabled" by the Department of Veteran Affairs.  (1st Am. Compl. ¶ 4).  The nature of the disability is otherwise not stated.

### 3.    *NIED Claim*

Moving Defendants also seek dismissal of the state law NIED claim asserted against Judge Goodwin.[8]  (Defs.' Mem. Supp. Mot. Dismiss 22-23).  For an NIED claim, a plaintiff must allege the elements of a standard negligence claim, which include a duty, breach, causation, and damages, as well as a "severe emotional injury."  *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-TBR, 2017 WL 5986972, at *11 (W.D. Ky. Dec. 1, 2017) (citing *Osborne v. Keeney*, 399 S.W.3d 1, 17-18 (Ky. 2012)).  "[A] mere formulaic recitation of an element of a cause of action is insufficient to state a claim without accompanying factual allegations."  *Id.* at *10 (citing *Alioto v. Advantage Assocs.*, No. 10-14-C, 2011 WL 4435681, at *3 (W.D. Ky. Sept. 22, 2011)); *see also Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

While the 1st Amended Complaint alleges that Judge Goodwin had a duty of care and that her duties arose from specific cannons of the Kentucky Code of Judicial Conduct, this pleading has otherwise failed to allege the essential elements of this claim against Judge Goodwin.  (1st Am. Compl. ¶ 278).  This claim is dismissed.

### 4.    *IIED Claim*

Finally, Moving Defendants contend that the 1st Amended Complaint fails to state a claim for IIED under Kentucky against Judge Goodwin.  (Defs.' Mem. Supp. Mot. Dismiss 24).  An IIED claim has four elements:

> 1) the wrongdoer's conduct must be intentional or reckless; 2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; 3) there must be a causal connection between

---

[8] This claim in Count VIII is also asserted against eight other Defendants.  (1st Am. Compl. ¶¶ 275-81).

the wrongdoer's conduct and the emotional distress; and 4) the emotional distress must be severe.

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004) (citing *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990)), *overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014). To state a claim, the alleged conduct must be "a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Craft v. Rice*, 671 S.W.2d 247, 250 (Ky. 1984). The actions taken by the defendant must have been alleged to have "been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Seitz*, 796 S.W.2d at 3 (quoting Restatement (Second) of Torts § 46 cmt. d).

Counts X and XI purport to assert IIED claims against Judge Goodwin and six other Defendants. (1st Am. Compl. ¶¶ 291-317). While the 1st Amended Complaint contains a formulaic recitation of the elements of an IIED claim in those counts, the allegations of emotional distress arising from the family court cases do not indicate that Judge Goodwin acted intentionally or recklessly to support such a claim for outrageous conduct. These two claims are asserted against numerous Defendants and fail to specifically allege how each Defendant—including Judge Goodwin—could be liable for this tort. *See Kensu v. Corizon, Inc.*, 5 F.4th 646, 650 (6th Cir. 2021) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S 506, 514 (2002)) (noting the Fed. R. Civ. P. 8 requirement of putting defendants "fair notice" and "the grounds upon which they rest"). The fact that Judge Goodwin made decisions impacting the custody of I.H. in her role as the presiding judge is not itself outrageous. To the extent that Judge Goodwin may have committed any error of law, the appropriate remedy is an appeal in state court, not a tort claim against Judge Goodwin. Accordingly, Plaintiffs have failed to state an IIED claim as a matter of law against Judge Goodwin, and these IIED claims are dismissed.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (DN 22) is **GRANTED**.  Plaintiffs' Section 1983 claims against Judge Goodwin, Willis, Nicholson, and Morgan in their individual and official capacities, the AOC, and the Kentucky Supreme Court are **DISMISSED WITH PREJUDICE**.  Plaintiff's Section 1983 claims against Ramsey in his official capacity and Comstock in her individual capacity are **DISMISSED WITH PREJUDICE**.  Plaintiffs' ADA claims against Judge Goodwin, Nicholson, and Morgan in their individual and official capacities, and the AOC are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff's ADA claims against Ramsey in his official capacity and Comstock in her individual capacity are **DISMISSED WITHOUT PREJUDICE**.  Plaintiffs' state law NIED and IIED claims against Judge Goodwin are **DISMISSED WITHOUT PREJUDICE**.

Greg N. Stivers, Chief Judge
United States District Court

February 10, 2025

cc:    counsel of record
       Plaintiffs, *pro se*