UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:24-CV-00047-GNS

TERESA HARMON                                                                                           PLAINTIFF

v.

HON. LORI GOODWIN et al.                                                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss (DN 74, 97) and Plaintiff's Motions for Leave to File Excess Pages (DN 101, 106).  The motions are ripe for adjudication.

### I.  BACKGROUND

This matter relates to two family court cases filed in Jefferson Family Court (Kentucky). (1st Am. Compl. ¶ 2, DN 6).  Plaintiff Teresa Harmon ("Harmon") claims she and her two children, I.H. and S.H. (collectively, "Plaintiffs"), had their constitutional rights violated, and were subjected to tortious conduct during a series of child custody hearings and actions.  (1st Am. Compl. ¶¶ 3-5, 25-55).

Plaintiffs filed this action asserting various federal and state law claims against numerous defendants.  (1st Am. Compl. ¶¶ 54-322).  For purposes of the pending motion, individual Defendants against whom Plaintiffs have asserted claims in both individual and official capacities are James K. Murphy ("Murphy") and Abigail Green ("Green").  (1st Am. Compl. ¶¶ 11, 12).  Plaintiffs allege that Murphy is an attorney who was appointed as friend of the court

1

("FOC") in one of the family court cases, and Green is an attorney who was appointed guardian ad litem ("GAL") in both family court cases.[1] (1st Am. Compl. ¶¶ 11, 12).

Murphy and Green have moved to dismiss all claims asserted against them pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Def.'s Mot. Dismiss, DN 74 [hereinafter Murphy's Mot. Dismiss]; Def.'s Mot. Dismiss, DN 97 [hereinafter Green's Mot. Dismiss]. Harmon opposes the motions. (Pl.'s Resp. Def.'s Mot. Dismiss, DN 101-1; Pl.'s Resp. Def.'s Mot. Dismiss, DN 106-1). Harmon has moved for leave to file responses to Murphy and Green's motions in excess of the page limitation imposed by LR 7.1(d). (Pl.'s Mot. Leave File Excessive Pages, DN 101; Pl.'s Mot. Leave File Excessive Pages, DN 106). No response was filed to Harmon's motions, which are therefore granted.

## II.    DISCUSSION[2]

Generally, threshold challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) should be decided before any ruling on the merits under Fed. R. Civ. P. 12(b)(6). *See*

---

[1] The 1st Amended Complaint purports to assert claims against Murphy and Green by Harmon on behalf of I.H. and S.H. The Sixth Circuit has held that "parents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative." *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) (citing *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir.1990); *see also Watkins v. Kentucky*, No. 1:23-CV-00088-RGJ, 2023 WL 7093042, at *2 (W.D. Ky. Oct. 25, 2023) ("Under 28 U.S.C. § 1654, '[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel[.]' That statute, however, 'does not permit plaintiffs to appear *pro se* where interests other than their own are at stake.'" (quoting *Shepherd*, 313 F.3d at 963)). Therefore, because Harmon cannot proceed *pro se* on behalf of I.H. and S.H., the claims asserted on behalf of I.H. and S.H. are dismissed without prejudice.

[2] The 1st Amended Complaint purports to assert claims against Murphy and Green in their individual and official capacities. (1st Am. Compl. ¶¶ 11-12). As this Court has recognized, a private party cannot be sued in his or her official capacity. *See Valdes v. Evans*, No. 5:19CV-P4-TBR, 2019 WL 334171, at *3 (W.D. Ky. Jan. 25, 2019) (citing *Lester v. Extendicare, Inc.*, No. 6:13-CV-21, 2013 WL 3781300 at *3 (E.D. Ky. July 18, 2013)). Therefore, because Murphy and Green are private parties, Harmon has not stated an official capacity claim against them, and any such claims are dismissed.

*Bell v. Hood*, 327 U.S. 678, 682 (1946). In most circumstances, a plaintiff bears the burden to survive Fed. R. Civ. P. 12(b)(1) motions to dismiss for lack of subject matter jurisdiction. *See id.*

Challenges to subject matter jurisdiction come in several varieties. Facial attacks challenge a plaintiff's establishment of jurisdiction in the complaint and require a court to examine the jurisdictional basis. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citation omitted). Factual attacks contest the existence of factual prerequisites to jurisdiction. *See id.* In such motions, in contrast to motions under Fed. R. Civ. P. 12(b)(6), a court is empowered to resolve the factual disputes affecting any jurisdictional prerequisites. *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). A plaintiff bears the burden in both these situations. *See Bell*, 327 U.S. at 682.

When considering a Rule 12(b)(6) motion, a court "must construe the complaint in the light most favorable to [the plaintiff] . . . ." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted). A court must also accept all of the plaintiff's allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements" are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, this standard is satisfied when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court has advised courts to review *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," but this does not mean a court should fill in absent arguments or create claims on a *pro se* plaintiff's behalf, thus becoming an advocate for the party. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).

A.     **Fed. R. Civ. P. 12(b)(1)**[3]

1.     **Rooker-Feldman *Doctrine***

Murphy and Green assert that this Court lacks jurisdiction to hear claims against them due to the *Rooker-Feldman* doctrine. (Murphy's Mot. Dismiss 4-5; Green's Mot. Dismiss 5-6). Under this doctrine, "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings." *Pieper v. Am. Arb. Ass'n*, 336 F.3d 458, 460 (6th Cir. 2003) (internal quotation marks omitted) (citation omitted). Only the U.S. Supreme Court has jurisdiction to review state court judgments. *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923). Thus, the *Rooker-Feldman* doctrine acts as a limitation on federal courts' jurisdiction, "[i]f the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's [ruling] . . . ." *Feldman*, 460 U.S. at 482 n.16.

While the 1st Amended Complaint seeks to couch its allegations as seeking vindication of Harmon's rights, Harmon is effectively asking this Court to review and overturn the decisions of the Jefferson Family Court. For example, Harmon challenges the state court's order

---

[3] Murphy and Green contend that Harmon's claims fail to the extent that the domestic-relations exception to federal jurisdiction applies. (Murphy's Mot. Dismiss 6-7; Green's Mot. Dismiss 7-8). "The domestic relations exception precludes federal courts from hearing cases that 'involv[e] the issuance of a divorce, alimony, or child custody decree.'" *Alexander v. Rosen*, 804 F.3d 1203, 1205 (6th Cir. 2015) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992)). This exception has only been applied to cases based on diversity jurisdiction; however, the present action is before this Court on federal question jurisdiction. (1st Am. Compl. ¶ 23); *see Chevalier v. Est. of Barnhart*, 803 F.3d 789, 795 (6th Cir. 2015). As a sister court has noted, "[t]he Sixth Circuit has declined to determine whether this exception also applies in federal-question cases, *see Alexander v. Rose*, 804 F.3d 1203, 1205 (6th Cir. 2015), but it has not closed the door on joining the Seventh Circuit in deciding that it does, in the proper case." *Robards v. Slatery*, No. 2:24-CV-00052, 2024 WL 4370780, at *2 (M.D. Tenn. Oct. 1, 2024) (citing *McGuire v. Tennessee*, No. 22-5614, 2023 WL 9289932, at *2 (6th Cir. Mar. 17, 2023), *cert. denied*, 144 S. Ct. 218 (2023)). In the absence of Sixth Circuit precedent applying the domestic relations exception to district court cases based on federal question jurisdiction, the application of this exception will not be considered.

4

prohibiting her from posting about I.H. or the litigation on social media, and Harmon seeks review of that court's order prohibiting her from contacting I.H. at school. (1st Am. Compl. ¶¶ 155, 273). The appropriate avenue for Harmon to seek judicial review of the Jefferson Family Court's decisions is through the state court system, and this Court lacks jurisdiction to conduct such a review. Harmon's Section 1983 claims against Murphy and Green are barred by the *Rooker-Feldman* doctrine, and those claims are dismissed.

### 2.    Younger *Abstention*

Murphy and Green also argue that this Court should abstain from hearing the claims raised against them based upon the doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971). (Murphy's Mot. Dismiss 5-6; Green's Mot. Dismiss 6-7). "*Younger* abstention requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (citing *Younger*, 401 U.S. at 40-41); *see also Doe v . Lee*, No. 3:21-CV-00809, 2022 WL 1164228, at *3 (M.D. Tenn. Apr. 19, 2022) (citation omitted) (noting the *Younger* abstention doctrine is a facial attack on the complaint). In determining whether to abstain on this basis, a court must consider three factors: "(1) whether the underlying proceedings constitute an ongoing judicial proceeding, (2) whether the proceedings implicate an important state interest, and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge." *Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir. 2008) (citation omitted).

As alleged in the 1st Amended Complaint, the state court proceeding is still ongoing, and Plaintiffs seek injunctive or declaratory relief for every cause of action.[4] (1st Am. Compl. ¶¶

---

[4] While the 1st Amended Complaint asserts that there is a lack of remedies in state court, the allegations reflect unsuccessful attempts to take interlocutory appeals rather than final and appealable decisions of the Jefferson Family Court. (1st Am. Compl. ¶¶ 318-22). As to

101, 111, 118, 125, 132, 138, 147, 156, 191-92, 211-12, 228-36, 248, 257, 274, 281, 290, 297-98, 301, 307, 317). Regarding the second factor, "the Sixth Circuit has recognized that the realm of domestic relations is an important state interest." *Evans v. Downey*, No. 1:15-CV-00117-GNS, 2016 WL 3562102, at *4 (W.D. Ky. June 23, 2016) (citing *Zak v. Pilla*, 698 F.2d 800, 801 (6th Cir. 1982)); *see also Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995) ("These traditional domestic relations issues qualify as important state issues under the second element of *Younger*."). Finally, Harmon may appeal any adverse decision of the family court to the Kentucky Court of Appeals as a matter of right. *See* KRS 22A.020. Thus, the relevant factors all weigh in favor of abstaining and dismissing the claims asserted against Murphy and Green based on the *Younger* abstention doctrine. Harmon's claims against these Defendants are dismissed based upon the *Younger* abstention doctrine.

### B. Fed. R. Civ. P. 12(b)(6)

#### 1. *Murphy*

Murphy seeks dismissal of the Section 1983 claims asserted against him as the FOC based on absolute immunity. (Murphy's Mot. Dismiss 16-21). The Supreme Court has held that absolute immunity may apply to certain persons "who perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). The Sixth Circuit has held that "quasi-judicial" immunity may apply to a FOC based after examining the duties and responsibilities of that position as prescribed by state law. *See Johnson v. Granholm*, 662 F.2d 449, 450 (6th Cir. 1981).

As to a FOC, Kentucky law provides:

---

Harmon's first appeal, her request to appeal *in forma pauperis* was denied, and her appeal was dismissed after she failed to timely pay the appeal filing fee.

> [C]ourts addressing custody and visitation disputes have broad rule and statutory authority to obtain the assistance of various professionals to help them understand the custodial situation and to make a determination as to the child or children's best interest. That authority includes the ability to appoint an attorney as a de facto friend of the court to investigate the circumstances on the court's behalf, to file a report summarizing his or her findings, and to make custodial recommendations.

*Morgan v. Getter*, 441 S.W.3d 94, 118 (Ky. 2014); *see also* KRS 403.090 (providing for the appointment of FOCs). This Court has held that absolute quasi-judicial immunity bars a Section 1983 claim asserted against a FOC when that person is acting pursuant to a court order and in accordance with the duties imposed by Kentucky law. *See Gaines v. Hagerty*, No. 3:21-CV-758-CRS, 2022 WL 1571770, at *3 (W.D. Ky. May 18, 2022).

In the 1st Amended Complaint, Harmon makes various allegations regarding the FOC report and Murphy's performance of his duties as FOC. (1st Am. Compl. ¶¶ 29-32). In particular, she alleges that "Murphy was acting with the authority vested in him as the court-appointed Friend of Court and advisor to the court pursuant to KRS 403.090 and court order." (1st Am. Compl. ¶ 56(c)). Overall, the allegations in the 1983 claims against Murphy warrant the dismissal of this claim based on quasi-judicial immunity, and Murphy's motion is granted.

### 2. Green

Green also seeks dismissal of the Section 1983 claims based on absolute immunity. (Green's Mot. Dismiss 17-19). The Sixth Circuit has held that "[q]uasi-judicial immunity shields guardians ad litem for . . . actions they take while investigating, gathering information about the parents and children, and reporting to the court their custody recommendations." *Arsan v. Keller*, 784 F. App'x 900, 908 (6th Cir. 2019) (citing *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984)). "A failure to grant immunity would hamper the duties of a guardian

ad litem in his [or her] role as advocate for the child in judicial proceedings." *Kurzawa*, 732 F.2d at 1458.

In performing GAL duties, Green had a duty to act in the "best interests of the child [she] represents." *Id.* The performance of these duties "clearly places [a GAL] squarely within the judicial process." *Id.* In fact, Harmon specifically alleges that "Green was acting with the authority vested in her as the court-appointed Guardian ad Litem and Child's attorney pursuant to KRS 387.305 and court order." (1st Am. Compl. ¶ 56(d)). Therefore, Harmon's Section 1983 claims against Green are also barred by quasi-judicial immunity and are dismissed.

### 3. *NIED and IIED*

Murphy and Green also challenge the sufficiency of the allegations in support of Harmon's NIED and IIED claims. (Murphy's Mot. Dismiss 12-16; Green's Mot. Dismiss 12-17).

#### a. NIED

To state an NIED claim, a plaintiff must allege the elements of a standard negligence claim, which include a duty, breach, causation, and damages, as well as a "severe emotional injury." *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-TBR, 2017 WL 5986972, at *11 (W.D. Ky. Dec. 1, 2017) (citing *Osborne v. Keeney*, 399 S.W.3d 1, 17-18 (Ky. 2012)). As this Court has noted, "a mere formulaic recitation of an element of a cause of action is insufficient to state a claim without accompanying factual allegations." *Id.* at *10 (citing *Alioto v. Advantage Assocs., Inc.*, No. 10-14-C, 2011 WL 4435681, at *3 (W.D. Ky. Sept. 22, 2011)); *see also Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

The 1st Amended Complaint fails to allege the essential elements of an NIED claim specifically as to Murphy or Green. (1st Am. Compl. ¶¶ 275-281). Accordingly, they are also entitled to dismissal of the NIED claim on this basis.

### c.     IIED

To state an IIED claim against Murphy or Green, Harmon must allege that:

> 1) the wrongdoer's conduct must be intentional or reckless; 2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; 3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and 4) the emotional distress must be severe.

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004), *overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014). The alleged conduct in support of this claim must be "a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Craft v. Rice*, 671 S.W.2d 247, 250 (Ky. 1984). The actions taken by the defendant must have been alleged to have "been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990) (quoting Restatement (Second) of Torts § 46 cmt. d).

Counts X and XI of the 1st Amended Complaint purport to assert IIED claims against Murphy, Green, and numerous other Defendants. (1st Am. Compl. ¶¶ 291-317). While the 1st Amended Complaint contains a formulaic recitation of the elements of an IIED claim in those counts, the allegations of emotional distress arising from the family court cases do not support a plausible claim that Murphy or Green acted intentionally or recklessly to support such a claim for outrageous conduct. These IIED claims are asserted against numerous Defendants and fail to specifically allege how each Defendant—including Murphy and Green—could be liable for this

tort. *See Kensu v. Corizon, Inc.*, 5 F.4th 646, 650 (6th Cir. 2021) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S 506, 514 (2002)) (noting the Fed. R. Civ. P. 8 requirement of putting defendants "fair notice" and "the grounds upon which they rest"). The fact that Murphy and Green served as FOC and GAL, respectively, in a family court proceeding is not itself outrageous. Accordingly, Harmon has failed to state an IIED claim as a matter of law against Murphy and Green, and these IIED claims are also dismissed for this reason.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motions to Dismiss (DN 74, 97) are **GRANTED**. Harmon's claims against Murphy and Green in their official capacities are **DISMISSED WITH PREJUDICE**. Harmon's Section 1983 claims against Murphy and Green in their individual capacities are **DISMISSED WITH PREJUDICE**. Harmon's NIED and IIED claims against Murphy and Green in their individual capacities are **DISMISSED WITHOUT PREJUDICE**. Any claims asserted by I.H. and S.H. are **DISMISSED WITHOUT PREJUDICE**.

2. Plaintiff's Motions for Leave to File Excess Pages (DN 101, 106) are **GRANTED**.

Greg N. Stivers, Chief Judge
United States District Court

August 7, 2025

cc: counsel of record
Plaintiffs, *pro se*